UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                                                      Crim. No. 1:11-cr-69

Brian Hoskins

## **REPORT AND RECOMMENDATION**
(Doc. 62)

Brian Hoskins, proceeding through counsel, has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him in this district following his plea of guilty to one count of knowingly and intentionally distributing cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (Doc. 62.) On May 22, 2012, United States District Judge J. Garvan Murtha sentenced Hoskins to a term of imprisonment of 112 months, to be followed by a five-year term of supervised release, pursuant to a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). (Doc. 56 at 2, 3.) As explained in greater detail below, Hoskins's offense conduct involved the sale or possession of 13.6 grams of cocaine base.

At the time of sentencing, Hoskins had sustained two prior drug felony convictions. (*See* Doc. 62 at 2.) These convictions played a significant role in the determination of Hoskins's sentencing exposure. One of those convictions, a "felony sale of heroin," has recently been vacated by the Vermont Superior Court. (Doc. 62-1 at 1, 2.) Accordingly, Hoskins asks this Court to vacate his federal plea and sentence, and "hold a new

sentencing hearing." (Doc. 62 at 1.) The government opposes Hoskins's Motion, arguing the Motion is barred by the statute of limitations. (Doc. 64 at 11–12.) The government also contends that despite the vacatur of the state conviction, Hoskins is barred from § 2255 relief because his plea agreement required the Court to impose the 112-month sentence under Rule 11(c)(1)(C). (*Id.* at 7–11.) A hearing on the § 2255 Motion was held on April 7, 2016, at which time the parties were afforded the opportunity to present evidence. (Doc. 81.) For the reasons set forth below, I recommend that Hoskins's § 2255 Motion (Doc. 62) be GRANTED, and that the Court vacate the judgment of conviction and hold a new sentencing proceeding.

## Background

### I.     The Charge and Conviction

On October 13, 2011, the federal grand jury returned a single-count Superseding Indictment charging Hoskins with knowingly and intentionally distributing a quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (Doc. 30.) Attorney William Kraham was appointed to represent Hoskins pursuant to the Criminal Justice Act. (*See* Docket Entry for 06/29/2011, "CJA 20: appointing Attorney William E. Kraham, Esq[.] for Brian Hoskins.")

Following arraignment, the parties engaged in extensive plea negotiations, which are documented in electronic communications between counsel. (*See* Doc. 64-1.) Specifically, Assistant United States Attorney (AUSA) Bill Darrow advised Attorney Kraham that, if convicted at trial, Hoskins would be subject to the career offender provisions of the Federal Sentencing Guidelines. (*Id.* at 1.) The career offender provisions

provide for a significantly enhanced Sentencing Guideline imprisonment range for offenders who commit a serious drug felony offense and who have previously sustained two prior qualifying drug felony convictions. *See* United States Sentencing Commission, Guidelines Manual § 4B1.1 (U.S. Sentencing Comm'n 2011) (USSG);[1] *see also* USSG § 4B1.1 (U.S. Sentencing Comm'n 2016). Darrow wrote to Kraham: "Hoskins is a USSG 'career offender' based upon three prior drug felonies, two of which appear to qualify under USSG [§] 4B1.1." (Doc. 64-1 at 1.) Darrow explained that Hoskins's 2003 federal conviction for distribution of cocaine base and his 2002 conviction in the Vermont Superior Court for sale of heroin were the two predicate convictions that would trigger application of the career offender provisions. (*Id.*) Darrow advised Kraham that if in fact the Court concluded that Hoskins was a career offender under USSG § 4B1.1, he would be subject to a sentencing range of 151–188 months, assuming Hoskins manifested an acceptance of responsibility for his offense conduct pursuant to USSG § 3E1.1 by pleading guilty. (*Id.*) Darrow further advised Kraham that if the government pursued other sentencing enhancements and Hoskins went to trial and was convicted, Hoskins's sentencing exposure could be as great as 262–327 months in prison. (*Id.*) Darrow proposed that Hoskins enter into a binding plea agreement pursuant to Rule 11(c)(1)(C) "in the 120–150[-]month range" to avoid the possibility of this exposure. (*Id.* at 2.) In response, Kraham acknowledged the likelihood of Hoskins facing career offender

---

[1] The Presentence Investigation Report (PSR) relies on the Sentencing Guidelines that were in effect in November 2011, so the Court cites to that version here. (PSR at 5, ¶ 22.)

3

exposure and proposed a sentence of 105 months. (*Id.* at 5.) Ultimately, counsel settled on a binding sentence of imprisonment for 112 months. (*See* Doc. 64-3 at 3; Doc. 41.)

On January 11, 2012, a Plea Agreement was filed in the district court, whereby Hoskins agreed to plead guilty to the charge of distribution of cocaine base. (Doc. 41.) The government agreed that: (1) Hoskins would not be prosecuted in the District of Vermont for any other criminal offenses known to the United States to have been committed by Hoskins in the District of Vermont relative to the distribution of narcotics; and (2) it would recommend that Hoskins receive an offense level reduction under the advisory United States Sentencing Commission Guidelines for his manifestation of an acceptance of responsibility pursuant to USSG § 3E1.1(a) and (b). (Doc. 41 at 3–4.) The parties agreed pursuant to Rule 11(c)(1)(C) that a term of imprisonment of 112 months was "the appropriate disposition of the case as regards to imprisonment." (*Id.* at 3.)

## II.   The Plea Proceeding

On January 11, 2012, Hoskins appeared before Judge Murtha to plead guilty to the offense charged in the Superseding Indictment. (Doc. 42.) The Clerk of Court for this district has advised the undersigned Magistrate Judge that the change of plea proceeding was not recorded by stenographical or electronic means, in contravention of Federal Rule of Criminal Procedure 11(g). Thus, there is no direct record of what was said or what otherwise occurred at Hoskins's change of plea proceeding.

## III.   The Presentence Investigation Report

In May of 2012, a Presentence Investigation Report (PSR) was prepared by the United States Probation Office and submitted to the Court in anticipation of sentencing.

The government's position during negotiations that Hoskins was a career offender under USSG § 4B1.1 was reflected in the PSR's sentencing calculation. (PSR at 6, ¶ 29.)

With regard to offense conduct, the PSR described eight controlled purchases of a total of 9.6 grams of cocaine base from Hoskins and two confederates. (*Id.* at 3–5, ¶¶ 7–17; 6, ¶ 23.) It also described the anticipated sale of an additional 4 grams of cocaine base for which Hoskins was held accountable. (*Id.* at 5, ¶ 17.) No other offense conduct is described in the PSR.

The PSR concluded that as a career offender Hoskins faced an advisory Sentencing Guidelines imprisonment range of 151–188 months, based on an adjusted offense level of 29 and a Criminal History Category (CHC) of VI. (*Id.* at 18, ¶ 82.) This sentencing range was determined as follows. Hoskins's base offense level was placed at level 20, based on the conclusion that Hoskins had trafficked in 13.6 grams of cocaine base. (*Id.* at 5–6, ¶ 23.) However, because Hoskins had sustained two countable drug felony convictions,[2] and was thus deemed to be a career offender, his offense level was increased to level 32. (*Id.* at 6, ¶ 29.) Pursuant to USSG § 3E1.1(a) and (b), three levels were subtracted from the offense level calculation because Hoskins had manifested an acceptance of responsibility. (*Id.* ¶ 30.) These adjustments resulted in a total offense level of 29. (*Id.* at 7, ¶ 31.) Hoskins's prior convictions, which included the two prior drug felony convictions, yielded nine criminal history points, placing him in CHC IV. (*Id.* at 11, ¶ 44.)

---

[2] The PSR detailed the two predicate prior drug felony convictions at ¶ 37 and ¶ 41. (*Id.* at 8, ¶ 37; 10, ¶ 41.)

However because the career offender provisions controlled, Hoskins's CHC was placed at VI.  (*Id.*)

## IV.  Sentencing

On May 22, 2012, Hoskins appeared before Judge Murtha for sentencing. (Doc. 58.)  The Court ascertained that Hoskins had no objection to the factual information set forth in PSR.  (*Id.* at 9.)  The government asserted no objections to the PSR.  In its Sentencing Memorandum, the government stated that the PSR's recommendations and findings, which included a description of Hoskins's trafficking in 13.6 grams of cocaine base, were "uncontested."  (Doc. 48 at 3.)

After hearing from counsel and Hoskins, Judge Murtha adopted the conclusions of the PSR as the findings of the Court.  (Doc. 58 at 13–14.)  Judge Murtha concluded that Hoskins's offense level calculation was based on a determination that Hoskins had distributed a range of "at least 11.2 grams but less than 16.8 grams of cocaine base." (*Id.* at 13.)  The Court also found that Hoskins sustained nine criminal history points for a CHC of IV.  (*Id.* at 14.)  However, the Court ruled that Hoskins was subject to sentencing as a career offender, resulting in an adjusted offense level of 29 and a CHC of VI, yielding a sentencing range of 151 to 188 months.  (*Id.* at 14.)  According to Attorney Kraham, under the calculations and assumptions set forth in the PSR, had Hoskins not been subject to the career offender provisions of the Sentencing Guidelines, his offense level would have been level 17 and his CHC IV, yielding an imprisonment range of 37–46 months. (*See* Doc. 64-3 at 2–3.)

Judge Murtha stated his intention to accept the Rule 11(c)(1)(C) agreement and imposed the agreed-upon sentence of 112 months.  (Doc. 58 at 15.)  Hoskins was advised of his right of direct appeal.  (*Id.* at 17.)  No appeal was pursued.

## V.   State Court Proceedings

On May 31, 2013, while Hoskins was incarcerated in federal custody, a motion for post-conviction relief was filed in the Chittenden Superior Court.[3]  (*See* Doc. 62-2.)  Hoskins sought to have his 2002 state conviction for sale of heroin vacated.  He brought a number of challenges to his conviction, including assertions that his conviction was not supported by an independent basis in fact and that the state court did not make an appropriate inquiry to satisfy itself that there was a factual basis for Hoskins's plea of guilty as required by Vermont Rule of Criminal Procedure 11(f).  (*Id.* at 4.)

On March 31, 2015, the Superior Court granted Hoskins's motion and vacated his sale-of-heroin conviction.  (Doc. 62-1 at 2.)  Judge Helen M. Toor concluded that the state trial court failed to comply with Rule 11(f) of the Vermont Rules of Criminal Procedure in accepting Hoskins's plea of guilty.  (*Id.*)  More precisely, Judge Toor concluded that the trial court failed to question Hoskins about the factual basis for the plea, in violation of Rule 11.  (*Id.*)  Judge Toor also acknowledged the effect Hoskins's state conviction had in the determination of the federal sentence (*id.*), but her decision was plainly based on the Rule 11 deficiencies in the state plea colloquy.  Hoskins reports that the State later dismissed the charge.  (Doc. 62 at 3.)

---

[3] The motion was signed by Hoskins on May 12, 2013.  (*Id.* at 8.)

## Discussion

**I.   Legal Standards Governing § 2255 Motions**

As noted above, Hoskins has now moved to vacate his plea and sentence because of the state court's vacatur of the 2002 sale-of-heroin conviction. A person in custody under a sentence of a federal court may seek to vacate that conviction under 28 U.S.C. § 2255(a) if (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the Court was without jurisdiction to impose such a sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. Relief under § 2255 for non-constitutional claims is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)). A habeas petitioner bears the burden of establishing that he is entitled to relief under § 2255. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

**II.   Analysis**

    **A.   Statute of Limitations**

The government argues that Hoskins's Motion is barred by the one-year statute of limitations which governs § 2255 motions. (Doc. 64 at 11–12.) Section 2255(f) provides as follows:

> A federal prisoner seeking relief under § 2255 must generally file a motion within one year from the latest of four benchmark dates: (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the right asserted is initially recognized by the Supreme Court, if it has been made

> retroactively available to cases on collateral review; or (4) when the facts supporting the claim(s) could have been discovered through the exercise of due diligence.

*Holmes v. United States*, Nos. 09 Cr. 126(JGK), 14 Cv. 6626(JGK), 2014 WL 6879061, at *1 (S.D.N.Y. Dec. 5, 2014) (emphasis omitted); *see also* 28 U.S.C. § 2255(f).

Here, § 2255(f)(4) controls the determination of the timeliness of Hoskins's petition. The United States contends that Hoskins was fully aware of his career offender status at his May 22, 2012 federal sentencing, yet he waited until May 31, 2013 to file a challenge in state court to his 2002 conviction. (Doc. 64 at 6, 12.) The government asserts that Hoskins has failed to demonstrate that he acted with the requisite due diligence for his current Motion to be timely under § 2255(f)(4). (*Id.* at 12.) I disagree.

In *Johnson v. United States*, 544 U.S. 295 (2005), the U.S. Supreme Court addressed the issue of "when the 1–year statute of limitations in [§ 2255] begins to run in a case of a prisoner's collateral attack on his federal sentence on the ground that a state conviction used to enhance that sentence has since been vacated." *Id.* at 298. The petitioner, Robert Johnson, Jr., had been sentenced in federal court in 1994 as a career offender under USSG § 4B1.1 on the basis of two 1989 drug convictions in Georgia. *Id.* In 1998, one of those convictions was vacated, and Johnson then filed a § 2255 motion in federal district court seeking to vacate the enhanced federal sentence on the basis of the vacatur of the state conviction. *Id.* at 300–01. The district court denied the motion as untimely under § 2255(f)'s one-year statute of limitations, and the Eleventh Circuit affirmed. *Id.* at 301–02.

The Supreme Court held that the vacatur of the state conviction was a "fact" that triggered a new one-year limitations period under 28 U.S.C. § 2255(f)(4), but that a petitioner may only take advantage of that provision if he has "sought [the vacatur of the predicate conviction] with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence." *Id.* at 298. Because Johnson had waited three years to commence the challenge to his underlying conviction, he had unreasonably delayed attacking his state court conviction. *Id.* at 311. As a result, the Court affirmed the dismissal of his § 2255 motion. *Id.*

Here, Hoskins has plainly acted within one year of the March 31, 2015 vacatur of his state conviction by filing his § 2255 Motion on December 14, 2015. Thus, the essential question is whether Hoskins demonstrated "due diligence" in his efforts to have his state conviction vacated after May 22, 2012, the date judgment was entered.

Multiple appellate courts "have held that, '[Section] 2255(f)(4) does not require maximum feasible diligence, but only "due" or reasonable diligence. Due diligence therefore does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts.'" *United States v. Longshore*, 644 F. Supp. 2d 658, 661 (D. Md. 2009) (alteration in original) (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002) (citing *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000))). It has also been observed that "in determining whether the § 2255 petitioner acted with due diligence, consideration should be given to his 'individual circumstances . . . , including the practical realities of [his] confinement.'" *Brown v. United States*, Civil No. CCB–13–2060, Criminal No. CCB–07–0437, 2014 WL

98797, at *2 (D. Md. Jan. 9, 2014) (alterations in original) (quoting *Longshore*, 644 F. Supp. 2d at 662).

Defendant Hoskins has filed a Declaration which states that, following his May 22, 2012 sentencing, he was housed on an interim basis at four separate correctional facilities until finally arriving at his designated facility in Otisville, N.Y. in approximately mid-July 2012. (*See* Doc. 79-1 at 1.) Once at Otisville, Hoskins began the process of obtaining and assembling documents from the Chittenden Superior Court. (*Id.* at 1–2.) Hoskins reports that he thereupon researched and wrote his motion, soliciting another inmate to prepare the final document for filing. (*Id.* at 2.) As stated above, the motion was signed on May 12, 2013, and it was mailed "that day or the next day." (*Id.*)

At the outset it must be noted that, pursuant to the "prison mailbox" rule, May 12 or 13, 2013 is the date the motion was "filed" for purposes of Hoskins's motion seeking collateral relief. *See Fernandez v. Artuz*, 402 F.3d 111, 113–16 (2d Cir. 2005) (applying federal mailbox rule to determination of when state post-conviction application was filed for tolling purposes under § 2244(d)(2)). Thus, Hoskins's motion was filed in the Chittenden Superior Court approximately eleven and a half months after his May 22, 2012 federal sentencing date. Hoskins's Declaration describes his incarceration at multiple interim facilities following his sentencing and adequately details his efforts to gather supporting documents and prepare and file the state court motion. An implicit requirement of diligence is a showing of directed activity, and Hoskins has satisfied that requirement. Although a delay of eleven and a half months approaches the outer limit of the definition of due diligence, given the practical realities of incarceration faced by Hoskins, I conclude

11

that this was a reasonable delay under the circumstances and that Hoskins has established that he pursued the vacatur of his state court conviction with due diligence. *See Brown*, 2014 WL 98797, at *2. Accordingly, I find that Hoskins's Motion is timely under § 2255(f)(4).

### B.     Whether Hoskins's Claim Is Cognizable Under § 2255

To begin, it is undisputed that in a series of cases the Supreme Court has "assume[d] . . . that a defendant given a sentence enhancement for a prior conviction is entitled to a reduction if the earlier sentence is vacated." *Johnson v. United States*, 544 U.S. 295, 303 (2005) (citing *Custis v. United States*, 511 U.S. 485 (1994); *Daniels v. United States*, 532 U.S. 374 (2001)). Several appellate courts, including the Second Circuit, have relied on *Johnson*, *Custis*, and *Daniels* to conclude that a prisoner may seek a reduction in a prior sentence when a state court conviction that enhanced that sentence has been vacated. *See Cuevas v. United States*, 778 F.3d 267, 274 (1st Cir. 2015); *United States v. Devost*, 609 F. App'x 47, 48 (2d Cir. 2015); *United States v. Gadsen*, 332 F.3d 224, 228 (4th Cir. 2003); *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999); *United States v. Walker*, 198 F.3d 811, 814 (11th Cir. 1999).

Despite this authority, the government argues that Hoskins's claim is not cognizable under § 2255 because he was sentenced pursuant to a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), and not as a career offender. (Doc. 64 at 7–11; *see also* Doc. 72.) The government thus contends that the vacatur of the state conviction is of no consequence. (Doc. 64 at 7.) The government asserts that the *Johnson* line of cases, which affords a prisoner collateral relief when an underlying state conviction

12

has been vacated, does not apply to Hoskins because those cases did not involve a binding Rule 11(c)(1)(C) sentencing agreement. (*See id.*)

The government's argument elevates form over substance. Hoskins's now-vacated state conviction clearly led to a significant enhancement of his sentence. The e-mails between counsel during the plea negotiations plainly show that Hoskins's exposure as a career offender was the dominant influence over all aspects of the plea negotiations. (*See* Doc. 64-1.) In fact, as posited by the government during those negotiations, the PSR concluded that Hoskins was subject to the career offender provisions. (PSR at 6, ¶ 29.) At sentencing, Judge Murtha engaged in the Sentencing Guidelines calculation and concluded that Hoskins was subject to the career offender provisions of the Sentencing Guidelines, in part because of his "two prior felony convictions," which included the state conviction at issue here. (Doc. 58 at 13.) The Court elected to accept the agreement of the parties and grant a variance from the career offender sentencing range. (*Id.* at 14.) But any reading of the record leads to the conclusion that the now-vacated state court drug conviction played a significant, if not a controlling role, in the ultimate determination of the sentence. Certainly, the resulting career offender calculation provided the framework for the negotiations, the plea agreement, and the sentence. The government sought to somewhat ameliorate the severity of the career offender provisions, but only in part. It compelled Hoskins to choose between the agreed-upon sentence of 112 months or face the far harsher prospect of a full career offender guideline. (*See* Doc. 64-1 at 1–6.) Without the application of the career offender provisions, Hoskins faced a sentencing range of

37–46 months in prison. With the conviction included in the sentencing calculus, he faced a range of 151–188 months with a plea of guilty, or, as the government suggested, perhaps as much as 262–327 months if he proceeded to trial. (*See id.* at 1.)

Based on the foregoing, it is evident that the state drug conviction enhanced Hoskins's offense level calculation and added points within his CHC, which was category IV; and the career offender status then increased his CHC to VI. (*See* PSR at 11, ¶ 44.) To suggest that these conclusions played no role in either Hoskins's acceptance of the plea agreement or the Court's decision to accept the binding nature of that agreement, ignores the harsh reality of the career offender provisions. *Peugh v. United States*, 133 S. Ct. 2072 (2013), offers guidance on this point. There, the Supreme Court held that the Ex Post Facto Clause is violated when an offender is sentenced under a current Sentencing Guideline higher than that in effect at the time of the offense. *Id.* at 2078. Writing for the majority, Justice Sotomayor observed that the Sentencing Guidelines, although advisory in nature, continue to serve as the "lodestone" of federal sentencing. *Id.* at 2084. Moreover, the Court observed: "That a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing." *Id.* at 2083.

Nonetheless, the government argues that Hoskins is barred from relief by drawing on the language of 18 U.S.C. § 3582(c)(2) and a line of cases interpreting the relationship between binding plea agreements under Rule 11(c)(1)(C) and that statute. (Doc. 64 at 9–11; Doc. 72.) Generally, a federal court is forbidden to modify a term of imprisonment once it has been imposed. *See United States v. Parrado*, 20 F. Supp. 3d 297,

299 (E.D.N.Y. 2014); *see also Freeman v. United States*, 131 S. Ct. 2685, 2690 (2011). However, 18 U.S.C. § 3582(c)(2) permits a court to modify a previously imposed sentence *if* the Sentencing Commission later lowers the sentencing range. The statute provides, in part, that a sentencing modification may occur:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*).

18 U.S.C. § 3582(c)(2).

In *Freeman*, the Supreme Court considered whether defendants who enter into plea agreements recommending a particular sentence as a condition of the guilty plea are eligible for § 3582(c)(2) relief. 131 S. Ct. at 2689. No majority of the justices agreed on a single rationale. *See id.* The narrowest, most case-specific basis for deciding *Freeman* was Justice Sotomayor's concurrence. *See United States v. Figueroa*, No. 00 CR 778–1(RJD), 2012 WL 2923288, at *2 (E.D.N.Y. July 18, 2012) (referring to Justice Sotomayor's concurrence as "narrower" than the plurality opinion). Justice Sotomayor stated that generally a sentence imposed pursuant to a binding plea agreement under Rule 11(c)(1)(C) is based on that agreement, not on the Sentencing Guideline range, such that no relief is available under § 3582(c)(2). *Freeman*, 131 S. Ct. at 2696 (Sotomayor, J., concurring) ("The term of imprisonment imposed by the sentencing judge is dictated by the terms of the agreement entered into by the parties, not the judge's Guidelines

calculation.").[4]  In his plurality opinion, Justice Kennedy noted the significant role of the Sentencing Guidelines calculation in binding plea agreements under Rule 11(c)(1)(C):

> Rule 11(c)(1)(C) makes the parties' recommended sentence binding on the court "once the court accepts the plea agreement," but the governing policy statement confirms that the court's acceptance is itself based on the Guidelines. That policy statement forbids the district judge to accept an 11(c)(1)(C) agreement without first evaluating the recommended sentence in light of the defendant's applicable sentencing range. The commentary to § 6B1.2 advises that a court may accept an 11(c)(1)(C) agreement "only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence departs from the applicable guideline range for justifiable reasons." Any bargain between the parties is contingent until the court accepts the agreement. The Guidelines require the district judge to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea.

*Id.* at 2692 (citations omitted).

Numerous courts, both before and after *Freeman*, have followed the rule—or predecessor of the rule—set forth in Justice Sotomayor's *Freeman* concurrence.  Those courts have concluded that where a sentencing range has been lowered by the Sentencing Commission in a case involving a sentence imposed pursuant to a binding plea agreement under Rule 11(c)(1)(C), the person is not entitled under § 3582(c)(2) to benefit from the subsequent Sentencing Commission's action because the original sentence was "based on" the Rule 11(c)(1)(C) agreement and not "based on a sentencing range." *See, e.g.*, *United*

---

[4] However, two limited exceptions to this prohibition were found to apply.  The first is where the parties "agree that a specific . . . sentencing range is the appropriate disposition of the case." *Id.* at 2697 (quoting Fed. R. Civ. P. 11(c)(1)(C) (alteration in original)).  Under this type of plea agreement, "the district court's acceptance of the agreement obligates the court to sentence the defendant accordingly, and there can be no doubt that the term of imprisonment the court imposes is 'based on' the agreed-upon sentencing range within the meaning of § 3582(c)(2)." *Id.*  For the second exception to apply, the plea agreement itself must "make clear that the basis for the specified term" is the applicable Guideline range. *Id.* (stating that the "sentencing range [must be] evident from the agreement itself").

16

*States v. Main*, 579 F.3d 200, 203 (2d Cir. 2009) ("We therefore hold that Main's sentence was 'based on' his Rule 11(c)(1)(C) agreement with the government, and not a sentencing range that the Sentencing Commission subsequently lowered, and conclude that the district court was without authority to reduce the sentence pursuant to 18 U.S.C. § 3582(c)(2)."); *United States v. Brown*, No. 04–CR–01016 (NGG), 2014 WL 2653986, at *3 (E.D.N.Y. June 13, 2014) ("[U]nder the Supreme Court's holding in *Freeman*, because Defendant's sentence was not 'based on' the applicable Guidelines he is ineligible for a sentence reduction under 18 U.S.C. § 3582(c)(2).").

However, *Freeman*, its progeny, and other cases cited by the government were based solely on the interpretation of a statute not at issue here. For instance, in *Main*, the Court of Appeals made it abundantly clear that the only issue on appeal was whether petitioner Main was eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). *Main*, 579 F.3d at 202. The *Main* decision had no effect on the existing law of the Second Circuit that "defendants who successfully attack state convictions may seek review of federal sentences that were enhanced on account of such state convictions." *United States v. Doe*, 239 F.3d 473, 475 (2d Cir. 2001).

In fact, the government advances no authority to support its assertion that the *Freeman* Court's concurring opinion—rather than the *Johnson* line of cases—should control here. *Freeman* is clearly limited to its analysis of claims where resentencing occurs under the statutory authority of § 3582(c), and there is no suggestion that *Johnson* was overruled or narrowed in any relevant way. While the Court in *Freeman* affirmed the continued vitality of plea agreements under Rule 11 (c)(1)(C), it also recognized the

17

determinative force that the Sentencing Guidelines have in Rule 11(c)(1)(C) plea agreements. This case does not involve statutory interpretation. Rather, this case involves a prior state drug trafficking conviction, now proven to be invalid, and therefore a fundamental defect in the determination of the appropriate sentence. Accordingly, it is the *Johnson* line of cases that governs consideration of Hoskins's Motion.[5]

Finally, the government contends that it possessed other evidence of Hoskins's drug trafficking activities which, if presented, would have increased Hoskins's sentencing exposure well beyond the non-career offender sentencing range of 37–46 months. (Doc. 64 at 10–11 n.6.) The relevance of these assertions is not immediately clear, although it may be to suggest that Hoskins had other reasons beyond career offender status to plead guilty under a binding plea agreement. But none of this evidence is described in the PSR. (*See id.*) In fact, the determination that Hoskins sold, or intended to sell, 13.6 grams of cocaine base was not challenged by the government at sentencing. In any event, it is not known what may have been stated at the change of plea hearing, if anything, about this purported evidence, given that the proceeding was not recorded. The Court should decline the government's invitation to engage in such speculation.

## Conclusion

It is undisputed that Hoskins's state conviction, which initially resulted in a substantially enhanced sentence, has now been vacated by the State of Vermont. As a consequence Hoskins has now filed a timely petition for collateral relief, and denial of the

---

[5] By extension, the government's argument concerning Rule 11(c)(1)(C) plea agreements would bar collateral relief even where it has been shown that the prior state conviction was obtained through unlawful conduct such as officer perjury or other gross misconduct.

relief sought would result in a miscarriage of justice. Accordingly, I recommend that Hoskins's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 62) be GRANTED and that further proceedings be held consistent with this recommendation.

    Dated at Burlington, in the District of Vermont, this 28th day of April, 2016.

                                            /s/ John M. Conroy
                                            John M. Conroy
                                            United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).